JOHN P. STOCKTON, attorney-general, in behalf of the state and on the relation of George W. Stillwell et al., and said GEORGE W. STILLWELL et al.

*v.*

THE ATLANTIC HIGHLANDS, RED BANK AND LONG BRANCH ELECTRIC RAILWAY COMPANY and DAVID S. ARNOTT et al.

1. A street railway company having, by grant recognized by the provisions of the act of March 16th, 1893 (*P. L. of 1893 p. 342*), the right to construct and operate its railway upon a turnpike, is not exempt from the performance of the conditions precedent to the construction of its railway which are required by the act of May 16th, 1894.

2. The attorney-general and abutting property-owners, relators and complainants with him, are entitled to a preliminary injunction to restrain the construction of such a street railway, if it shall not comply with those conditions precedent.

On order to show cause why preliminary injunction shall not issue. Heard on bill and affidavits.

*Mr. John P. Stockton*, attorney-general, and *Mr. Henry M. Nevius*, for the application.

*Mr. Daniel H. Applegate, contra.*

THE CHANCELLOR.

The attorney-general and the relators and complainants ask that the Atlantic Highlands, Red Bank and Long Branch Electric Railway Company be restrained from constructing a railway, to be operated by electricity supplied by overhead wires according to that which is known as the trolley system, over that portion of the highway, between Red Bank and Eatontown, in Monmouth county, which was formerly the Red Bank and Eatontown turnpike, lying within Shrewsbury township.

The highway in question was originally a country road, laid out about a century ago, which subsequently, in 1865, by authority of a charter granted by the legislature (*P. L. of 1865 p. 7*), was taken possession of by the Red Bank and Eatontown Turnpike Company, and thereafter was maintained as a turnpike and toll road until 1891, when the turnpike company ceased the collection of tolls and the maintenance of the road. By an act approved March 16th, 1893 (*P. L. of 1893 p. 574*), the charter of the turnpike company was repealed, subject to the proviso that its repeal should not affect any authority, permission or franchise to construct and operate a street railway on the road-bed of the turnpike which might have been granted, sold or conveyed by the company prior to the passage of the repealing act, but that such authority, permission or franchise should be as valid as if the repealing act had not been passed. The same day that this repealing statute was approved another statute was

enacted entitled "An act to authorize and regulate the construction of street railways upon turnpikes" (*P. L. of 1893 p. 342*), which provides:

"That any duly-incorporated street railway company of this state may construct and operate a street railway upon and along the road-bed of any turnpike company located within counties of the second class in this state which shall have granted or conveyed such right or privilege to such street railway company;"

and further, that the township committee of a township through the limits whereof such turnpike shall extend may, upon petition and proof of such grant, locate the tracks of such street railway company, and after such location shall have been made the street railway company shall, in other respects, conform to the law concerning horse and street railways.

The defendant corporation was organized April 6th, 1895, under the act entitled "An act to authorize the formation of traction companies for the construction and operation of street railways or railroads operated as street railways and to regulate the same," approved March 14th, 1893, for the purpose of operating and constructing a street railway. A proviso in the first section of that act requires that no corporation created under the act shall enter upon a highway for the construction of new lines of railway or for the operation thereof without the consent of the body of the township into or within the limits of which such new line of railway is proposed to be extended.

By an act of the legislature approved May 16th, 1894 (*P. L. of 1894 p. 374*), entitled "An act to regulate the construction and maintenance of street railroads in this state," it was prescribed that

"in addition to the provisions or restrictions now required by law, no street railroad shall from and after the passage of this act, be constructed in, over and upon any street, avenue, highway, land or other public place in any municipality, town, township, village or borough of this state except upon the consent of the governing body of such municipality, town, township, village or borough, which consent shall only be granted upon a petition of the corporation desiring to construct, * * * filed with the clerk,"

nor until public notice of such application shall have been given by publication in newspapers and by posting for fourteen days before the governing body shall meet.   The consent is to be by ordinance and not otherwise, and is not to be granted until there shall be filed with the clerk

"the consent in writing of the owner or owners of at least one-half in amount in lineal feet of property fronting on such street, highway, avenue or other public place through which permission to construct, operate and maintain a street railway is asked."

On the 10th of March, 1893, six days before the repeal of its charter, the Red Bank and Eatontown Turnpike Company, by its deed to the Eatontown and Long Branch Turnpike Company, essayed to convey to the latter company the right to construct and maintain along and upon the road-bed of the former company's turnpike a street railway operated by horses, electricity or other power, and on the 2d of May, 1895, the Eatontown and Long Branch Turnpike Company, by its deed, purported to grant to the defendant street railway corporation the right to construct its proposed railway over the former turnpike of the then defunct Red Bank and Eatontown Turnpike Company.

Subsequent to that deed, the defendant company petitioned he township committee of Shrewsbury township to locate the tracks of the street railway it proposed to build upon that road and such location was made, and thereupon, without having obtained the consent of the township committee or the consent of the owners of abutting property, the construction of the railway was commenced and was being pushed when it was stopped by the order to show cause herein.

It may well be questioned whether any right was had in virtue of the deed from the Red Bank and Eatontown Turnpike Company.   I do not find any statute which authorizes one turnpike company to grant to another turnpike company the right to construct and operate a street railway on the road-bed of the granting company.   The act entitled "An act relating to street railways within incorporated towns and boroughs in this state," approved April 30th, 1887 (P. L. of 1887 p. 240), authorizes

the conveyance of a portion of a turnpike within an incorporated town or borough, and thirteen hundred yards out of the town or borough either way, to a street railway company to be operated by horses, and a supplement to that act approved March 31st, 1890 (*P. L. of 1890 p. 166*), gives authority to a turnpike company to construct and operate a street railway upon its own road-bed; but there is no act which permits one turnpike company to acquire the right to operate a street railway, or to operate a street railway upon the road-bed of another turnpike company. It is difficult to see how a grant of such a right can have any validity. But that is not the question in this application.

Assuming the deeds to have lawfully made the grant, so that under the act of 1893 (*P. L. of 1893 p. 342*), the defendant company may construct and operate its street railway upon the former road-bed of the Red Bank and Eatontown Turnpike Company, is it lawful for it to proceed with the construction of its railway, without obtaining the consent of the township committee as the act under which it is incorporated requires, and without complying with the conditions precedent which the act of 1894, above mentioned, prescribes?

It is remembered that the act of 1893, which permits the operation of a street railway over a turnpike when the turnpike company shall have granted such right of way, provides that after the township committee shall have located the tracks on the turnpike upon which the street railway is granted the right of way, the street railway company shall in other respects conform to the law concerning horse and street railways. The purpose of the act obviously was not to make the street railways on turnpikes a privileged class, exempt from such requirements of the law as the legislature might be pleased to impose in the protection of the public and abutting property-owners. They were to conform to the law applicable to all street railways. The grant gave them the right as against the grantor turnpike company to run upon the turnpike, in the location the township committee should designate, and nothing more.

Stockton *v.* Atlantic Highlands &c. Ry. Co.

Before the defendant street railway corporation came into existence, before the deed to it and before the location of its tracks, the act of 1894, to regulate the construction and maintenance of street railroads in this state, had been enacted. It therefore incorporated and took a deed from the Eatontown and Long Branch Turnpike Company, with full notice and knowledge of that which, under the act of 1894, it was bound to do before it could commence the construction of its railway. The act of 1894 prescribes conditions precedent to the construction of *any* street railway upon a highway, which conditions are expressly declared to be *additional* to the requirements of law then existing. The statute obviously was intended to have universal application to *all* classes of street railways, and to prescribe conditions which must in all cases be complied with before the highways can be entered upon. Its scheme is not to repeal other conditions precedent, but to add to them. Its intended application to all street railways is emphasized not only by its unmistakable language, but also by necessary implication from its second section, which excepts from its operation railways whose locations had been theretofore granted and whose construction had theretofore been commenced, but not those roads whose applications for locations were then pending.

I think that it is too plain to admit of doubt that the defendant corporation, in order to a lawful construction of its road, must first comply with the conditions imposed by the act of 1894.

Now, this being so, may the attorney-general have a preliminary injunction to stay the construction until that statute shall be obeyed?

The statute of 1894 prescribed its conditions precedent for the protection of the public and the owners of property abutting on highways through which street railways may be constructed, and thereby it creates rights which are entitled to protection and imposes duties which must, in obedience to the law, be performed.

In the recent case of *The Inhabitants of the Township of Franklin* v. *Nutley Water Co.* (opinion filed July 15th, 1895), Vice-

Chancellor Emery has discussed the principles which, I think, are here applicable. He reached the conclusion that the township of Franklin was entitled to a preliminary injunction to prevent the Nutley Water Company laying water-pipes in the highways of that township without its consent, such consent being, by statute, made a condition precedent to such work. He said:

" For the full protection of the statutory rights of municipalities, a preliminary injunction is necessary, and in this respect the case rests upon the same basis as the right of the court of equity to interfere by preliminary injunction where a public company, under cover of statutory authority, attempts to appropriate the lands of another without complying with the legal conditions precedent, either constitutional or statutory. * * * Where the statutory right is clear, it seems to me it would imperil the public control of highways and deprive municipalities of the powers and advantages intended to be given by statutes if, on the mere claim of right to occupy the streets without consent, this court should decline to interfere pending the final determination upon the claim."

There can be no question that the attorney-general has at least an equal standing with the township committee in the protection of the public right, and I think, because there is a condition in the act of 1894 that the consent of property-owners abutting on the highway shall be had, that such property-owners are accorded rights which they likewise may have protected by the same instrumentality. The present application is by both attorney-general and property-owners, who also are a part of the general public.

Without adverting to other questions discussed at the hearing, I will make the order to show cause absolute and grant the injunction sought.